UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUL 1 5 2019
AT____ O'CLOCK
John M. Domurad, Clerk - Syracuse

Kha'Sun Creator Allah,

                Plantiff

VS.

             PRISONERS CIVIL RIGHTS
             COMPLAINT PURSUANT TO
             42 U.S.C. 1983

Osman Yildiz, Dr. Mahmud,
Carla Stenbogker, Tim Kemp,       9:19-cv-839
J. Marinelli, DSA Danforth, Dr. Kunae,
Nurse Multens, C. Keating, M. Kelch,
Travis Sawyer, M. Law, Mary Ellen Maihi-tin,
Nurse McBroin, R. Bryant, Brenda Maurice,
J. Devins, D. Hitts, R. Lamay, Sgt. K. Bezio,
C. Carter, R. Lee, sued in their
individual capacity,

            Defendants

       Plantiff, in the above captioned action, alleges
as follows:

## JURISDICTION

1. This is a civil action seeking relief and damages to
defend and protect the rights guaranteed by the

cont'd

pg 2

constitution of the United States. This action is brought pursuant to 42 U.S.C. 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. 1331, 1343 (3)(4) and 2201.

## PARTIES

2. The plaintiff Kha'sun Creator Allah was incarcerated at Downstate Correctional Facility, Sullivan Correctional Facility, Upstate Correctional Facility and Clinton Correctional Facility during the events described in this complaint.

3. Defendant Yildiz is a social worker employed at Sullivan Correctional Facility. He is sued in his individual capacity.

4. Defendant Mahmud is a psychiatrist employed at Sullivan Correctional Facility. He is sued in his individual capacity.

5. Defendant Carla Steinbogher is the Office of Mental Health Social Worker for the Special Housing Unit at Sullivan Correctional Facility and is responsible for providing mental health care to all prisoners in SHU.

6. Defendant Tim Kemp is Office of Mental Health Unit Chief at Upstate Correctional Facility an as Unit Chief, defendant

<u>cont'd</u>                                                    pg. 3

manages its day to day operations and executes its policies.
He is sued in his individual capacity.

7. Defendant J. Marinelli is an office of mental Health
Social Worker employed at Upstate Correctional Facility. He
is sued in his individual capacity.

8. Defendant Danforth is the Deputy Superintendent of
Administration employed at Upstate Correctional Facility. She
is sued in her individual capacity.

9. Defendant Kumar is the Facility Health Director at
Upstate Correctional Facility an as Facility Health Director,
defendant manages its day-to-day operations and executes
its policies, He is sued in his individual capacity.

10. Defendant Mullens is a nurse employed at Upstate
Correctional Facility. She is sued in her individual capacity.

11. Defendant C. Keating is a correctional officer employed at
Upstate Correctional Facility. He is sued in his individual
capacity.

12. Defendant M. Kelch is a Captain employed at Upstate
Correctional Facility. He is sued in his individual capacity.

cont'd

13. Defendant Travis Sawyer is a Nurse Practitioner employed at Clinton Correctional Facility. He is sued in his individual capacity.

14. Defendant M. Law is an Office of Mental Health social Worker employed at Clinton Correctional Facility. He is sued in his individual capacity.

15. Defendant Mary Ellen Maihirtn is a nurse employed at Clinton Correctional Facility. She is sued in her individual capacity.

16. Defendant McGraw is a nurse employed at Clinton Correctional Facility. She is sued in her individual capacity.

17. Defendant R. Bryant is a nurse employed at Clinton Correctional Facility. Being sued in individual capacity.

18. Defendant Brenda Maurice is a nurse employed at Clinton Correctional Facility. She is sued in her individual capacity.

19. Defendant J. Deuns is a Correctional Officer employed at Clinton Correctional Facility. He is sued in his individual capacity.

cont'd

pg. 5

20. Defendant D. Hilts is a correctional officer employed at Clinton Correctional Facility. He is sued in his individual capacity.

21. Defendant R. Laroy is a correctional officer employed at Clinton Correctional Facility. He is sued in his individual capacity.

22. Defendant K. Bezio is a sergeant employed at Clinton Correctional Facility. He is sued in his individual capacity.

23. Defendant C. Carter is a correctional officer employed at Clinton Correctional Facility. He is sued in his individual capacity.

24. Defendant R. Lee is a correctional officer employed at Clinton Correctional Facility. He is sued in his individual capacity.

## PREVIOUS LAWSUITS BY PLAINTIFF.

25. Plaintiff has filed other lawsuits relating to his imprisonment.

Name (s) of the parties to this other lawsuit:

cont'd                                                          pg.6
   Plaintiff: Khaliq Clark

Defendant(s): Andrew Danhem, Dennis Hardy, David Matyas,
                Thomas Breckon, Donald Selsky

a) Court: Western District

b) Docket Number: 02-CV-6525

c) Name of Judge to whom case was assigned:
   Hon. David G. Larimer

d) Date the action was filed: November 27, 2002

e) Disposition of the case: settlement

26. Name(s) of the parties to this other lawsuit:

   Plaintiff: Kha'sun Creator Allah

   Defendant(s): Tim Kemp, Wayne Crosier

a) Court: Northern District

b) Docket Number: 9: 08-CV-1008

cont'd

pg. 7

c.) Name of Judge to whom case was assigned:
   Hon. Norman A. Mordue

d.) Date the action was filed: September 23, 2008

e.) Disposition of the case: settlement

27. Name(s) of the parties to this other lawsuit:

   Plaintiff: Kha'sun Creatae Allah

   Defendant(s): John Rosat., E. LaPan, T. Lafountain,
                 J. Vandenburgh

   a.) Court: Northern District

   b.) Docket Number: 9: 14-cv-0788

   c.) Name of Judge to whom case was assigned:
      Hon. Gary L. Sharpe

   d.) Date the action was filed: June 30, 2014

   e.) Disposition of the case: settlement

cont'd

pg. 8

28. Name(s) of the parties to this other lawsuit:

Plaintiff: Kha'Sun Creator Allah

Defendant(s): Lynn Morrison, Paul Piccolo, Michael Randall

a) Court: Western District

b) Docket Number: 14-CV-6735

c) Name of Judge to whom case was assigned:
   Hon. David G. Larimer

d) Date the action was filed: January 13, 2015

e) Disposition of the case: pending

29. Name(s) of the parties to this other lawsuit:

Plaintiff: Kha'Sun Creator Allah

Defendant(s): Paul Piccolo, Paul Chappius, JR.,
              Heather Laseur, Sgt. Carrington

a) Court: Western District

cont'd                                                    pg. 9

b.) Docket Number: 1:16-CV-177

c.) Name of Judge to whom case was assigned:
    Hon. Frank P. Geraci, JR.

d.) Date the action was filed: February 29, 2016

e.) Disposition of the case: pending

30. Name(s) of the parties to this other lawsuit:

    Plaintiff: Kha'Sun Creator Allah

    Defendant(s): Sgt. Depado, T.J. Gonzalez, Timothy Humphrey,
                  Father Ndukaku, Robert Cunningham,
                  Donald Vennettozzi

    a.) Court: Southern District

    b.) Docket Number: 17-CV-6313

    c.) Name of Judge to whom case was assigned:
        Hon. Kenneth M. Karas

    d.) Date the action was filed: August 17, 2017

cont'd                                                        Pg. 10

c.) Disposition of the case: Pending on Appeal

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

31. Plaintiff has used the prison grievance procedure to try to solve his problem. He presented the facts relating to my claim in the state prisoner grievance procedure.

## STATEMENT OF CLAIM

32. Plaintiff re-alleges and incorporate by reference paragraphs 1-32 herein.

33. At all relevant times herein defendant(s) were "persons" for purposes of 42 usc section 1983 and acted under color of state law to deprive plaintiff of his constitutional rights as set forth more fully below.

## FACTS

34. On the dates of November 7th, 8th and 10th, 2016, while in Downstate Correctional Facility transit I refused to go on the draft to Upstate Correctional Facility.

cont'd                                                    pg. 11

35. Everytime I refused I would show the sergeant the self-inflicted cut on my arm I sustained my last time at Upstate and told him I'm not going back there to go through what I went through again.

36. I received a misbehavior report everytime I refused and on November 9, 2016, while still in Downstate I wrote Downstate office of mental health explaining that I suffered a psychological breakdown last time I was in Upstate, where I self-mutilated myself and before I go through that again I'll kill myself if I'm returned there.

37. On November 10, 2016, OMH social worker Sullivan informed me mental health received my letter and she would call me out to speak with me on monday November 14th.

38. On November 11, 2016, security staff informed me I'm going to Upstate and if I refused this time they'll drag me out, so I reluctantly went under duress back to Upstate.

39. Upon arrival at Upstate, I failed the initial suicide screening and was placed on 1-on-1 suicide watch

cont'd

pg. 12

40. While on suicide watch, I refused to eat or drink water for six straight days (November 11-17).

41. During my hunger/water strike I told defendants Kemp, Kumar, Mullens and Danforth that I'd rather die than go through losing my mind again in this facility again.

42. Defendant Kemp told me didn't you sue me already and now your back here, I don't care what you have to say I'm retiring next year and you could starve to death or die of dehydration for all I care.

43. Defendant Danforth came to my cell in her capacity as the Hunger Strike Coordinator. I showed her my arm to emphasize what happened last time I was in Upstate and told her I'd rather die than go through losing my mind again. Her response was SHU is SHU and your not going anywhere and showing me that scar means nothing to me.

44. On November 17, 2016, Defendant Kumar came in my cell and told me he spoke with defendants Kemp, Danforth and Central Office and told me they are aware of my situation and I will not be returning to Upstate, once I'm sent out for evaluation. Upon hearing this I ended my hunger/water strike, but it turned out to be a lie.

cont'd                                                                    pg. 13

45. Defendant Kumar knowingly lied to me while I was suicidal and on hunger strike.

46. On November 18, 2016, I was sent to Sullivan Residential Crisis Treatment Program.

47. On November 21, 2016, I was seen by Dr. Mahmud and Osman Yildiz.

48. At this initial meeting they produced the letter I wrote while in Downstate to Downstate MHU. I confirmed yes and reiterated what was in the letter. That I suffered a mental breakdown last time I was in that place (Upstate) and I refuse to go through that again and I'll kill myself if I'm returned there.

49. On November 22, 2016, I seen Dr. Mahmud and Osman Yildiz again and reiterated to them that if I'm returned there to Upstate I'll kill myself because I lost my mind last time I was there and self-mutilated myself in that horrible place.

50. On November 23, 2016, I seen Osman Yildiz and reiterated to him again that Upstate drove me crazy and I cant go through that again and if I'm returned there

cont'd                                                                                        pg. 14.

I'll kill myself.

51. All Dr. Mahmud and Osman Yildz did was prescribe me medication and discharge me on the 23rd to be returned to Upstate.

52. On November 25, 2016, while in Sullivan SHU, I stopped MHU social worker Carla Steinbogher on her rounds.

53. I asked defendant Steinbogher my status, whether I was staying there or being transferred somewhere else and she said your level 3 and going back to Upstate.

54. I then proceeded to show defendant Steinbogher the self-mutilated cut on my arm, and told her this happened last time I was there and before I go through that again I'll kill myself if I go back there. She wrote something down and walked away.

55. Despite my hunger strike and water strike for on suicide watch for 6 days at Upstate (November 11-17, 2016) and my pleas to not return to Upstate because of past trauma where I self-mutilated myself and would kill myself if I'm returned there, my pleas were ignored by Tim Kemp, DSA Danforth, Dr. Kumar, Dr. Mahmud, Osman Yildz and Carla Steinbogher.

cont'd

Pg. 15

56. On November 29, 2016, I was returned to Upstate.

57. On December 1, 2016, while at Upstate I swallowed a razor to kill myself.

58. After swallowing the razor I was sent to the outside hospital where I refused treatment by not letting them remove the razor.

59. I was returned to ~~[illegible]~~ upstate from the outside hospital and placed back on 1-on-1 suicide watch with C.O. Keating watching me.

60. While on this watch I had an anxiety attack and started walking back and forth banging my head against the wall repeatedly to kill myself and screaming get me out of here.

61. While I was banging my bleeding head into the wall continuously the Unit Chief Kemp stood there smiling while C.O. Keating who was watching me on 1-on-1 suicide watch, laughed and screamed harder with other officers, sergeant and Capt. Kelch.

cont'd                                                    pg. 16

62. The medical staff eventually came to my cell and Nurse Mullens just watched laughing and writing into a log book.

63. Dr. Kumar and another unknown health official arrived when I heard Dr. Kumar tell C.O. Keating "leave him in there and don't do anything until he busts his head open or knocks himself out."

64. I continued self-harming myself and Unit Chief Kemp, J. Marinelli, Dr. Kumar, Nurse Mullens, C.O. Keating, Capt. Kelch watched me bang my head against the wall for 1 hour and 12 mins (see Exhibit A)

65. Despite me bleeding from my head and blood all over the walls while banging my head against the walls they did nothing.

66. I eventually went unconscious where I remained laid out on the floor without medical attention for 15 minutes. (see Exhibit A)

67. I was finally revived and rushed to the hospital via ambulance for CAT scan and surgery to have the razor removed.

cont'd                                                                pg.17

68. To this day I have a big scar on the top of my head due to the deliberate indifference of Upstate staff.

69. I remained at Upstate on suicide watch until December 5, 2016, when I was sent to Clinton Residential Crisis Treatment Program (RCTP) in the Mental Health Unit where I remained until December 27, 2016.

70. While in Clinton RCTP I was denied adequate mental health treatment due to racial discrimination because I was black.

71. While in Clinton RCTP I was seen by Nurse Practitioner Sawyer about 3 times and informed him I was still suicidal after being incarcerated 18 years and couldn't take it no more.

72. I also seen social worker M. Law about 3 times and informed him of the same thing.

73. After telling defendant Sawyer and Law this I was just returned to the strip cell without any treatment or plans for treatment.

cont'd                                                                pg. 18

74. After telling them I was still suicidal and my recent suicide attempts of swallowing a razor and banging my head against the wall until I was unconscious and hospitita hospitalized, defendants Sawyer and Law had me remain in a strip cell in RCTP for 22 days without seeing a doctor (psychiatrist).

75. All the while I'm in Clinton RCTP I'm seeing multiple white prisoners similarly situated receive treatment and referrals to mental health programs and Central New York Psychiatric Center, while myself and other black prisoners remained in strip cells in RCTP without any adequate treatment.

                                                    defendant Sawyer

76. On the date of December 21, 2016, came to my cell and asked me why I didn't come out to speak to him and how I'm feeling. I responded "I feel the same as I've been feeling since my admission which is suicidal and I'm tired of you asking me the same questions because nothing has changed."

77. Defendants Sawyer and Law denied me adequate mental health treatment by falsifying progress notes by not really documenting what I'm telling them and reporting things like having a history of substance abuse, when I

cont'd                                                                            pg 19

never did drugs or alcohol and stating things I never
stated to justify their denial of my treatment and
racial discrimination and denial to see a doctor
(psychatrist) after multiple suicide attempts. (see, Exhibit B)

78. On December 21, 2016, approximately five minutes
after telling defendant Sawyer cell side I'm still
suicidal, defendant Devins comes to my strip cell
with my clothes in a bag and tells me I'm being
discharged.

79. After receiving the plastic bags and clothes
I proceeded to dress.

80. After dressing I proceeded to rip the plastic bag
to a reasonable size so I could place it over my
head and kill myself.

81. I then laid on my bed, placed the coat over my
head and proceeded to tie the bag over my head.

82. After that all I remember is coming up for air and
bumping heads with C.O. Devins and immediately being
punched by C.O. Devins and C.O. Hilts upon my face and body.

cont'd                                                    pg. 20

83. I was then thrown off the bed to the ground face first where I was kicked and stomped upon my back and legs, my boots and socks were removed and the bottom of my feet beat with a baton and my left pinky being turned the wrong way. This was done by defendants Devins, Hilts, Lamay, Bezio, and multiple unknown officers that responded to the incident.

84. This assault occurred in RCTP OBS (observation) cell 12 and the top of my head was gushing with blood from bumping heads with defendant Devins and being repeatedly hit on the head and being thrown face first into the ground.

85. After beating on me in the RCTP I was taken downstairs to the facility hospital by defendants Bezio, Carter, and Lee and placed in Hospital Room #6.

86. After entering room 6 a lieutenant enters and the door is closed when I'm told to step to the wall in the corner. At the time I'm handcuffed behind my back. The lieutenant then says "was he talked to" and defendant Bezio responds "he was talked to upstairs." The lieutenant then states "I don't like the fact hes able to stand he could use some more talking to." At that time defendants Carter and Lee take me off the wall and proceed to re gin

cont'd                                                    pg. 21

blows all over my body.

87. They assaulted me upon my torso for about five straight minutes while I'm defenseless.

88. I'm then put back against the wall with my face facing the wall when the lieutenant then begins to ask me questions. Everytime I start to answer C.O. Lee takes his fingers and like a vice grip starts choking me saying answer the fucking question. At the same time C.O. Carter would squeeze my testicles. This happened about four different times. Finally, the lieutenant said thats enough the camera will be here in a minute.

89. I was examined by medical and returned to suicide watch in RCTP. and placed in OBS cell 2. (see Disk at Exhbit C). Upon my return I was denied lunch & dinner by the officers on duty in RCTP.

90. During the evening med run on December 21, 2016, I informed RCTP nurse Mary Ellen Mahurin that the officers arent feeding me and nothing was done by nurse Mahurin.

cont'd
Pg. 22

91. On the date of December 22, 2016, I was denied breakfast by the officer serving breakfast in RCTP and during the morning med run I informed RCTP nurse McGrow I was not being fed by the officers and nothing was done by nurse McGrow.

92. On December 22, 2016, I was denied lunch and dinner by the officer serving lunch and dinner in RCTP.

93. On December 22, 2016, I informed RCTP nurse McGrow again that the officers are refusing to feed me and can she report this so I could eat but nothing was done.

94. On December 23, 2016, I was denied breakfast by the officer serving breakfast in RCTP and during the morning med run I informed RCTP nurse R. Bryant and Social Worker Law the officers are refusing to feed me and could they do something because I haven't eaten since breakfast on the 21st. Again nothing was done.

95. On December 23, 2016, I had to basically crawl to the interview room due to the injuries sustained due to the beating I received on December 21st, whereas I informed the unknown woman Nurse Practitioner that the officers are trying to starve me to death because they haven't fed

cont'd                                                    pg. 23

me since they beat me on me on December 21st and I fear
they will come in my cell and kill me. I was then sent back
to OBS cell 2 and denied lunch and dinner by the officers
serving lunch and dinner in RCTP.

96. On December 23, 2016, during the evening med run
I informed RCTP nurse, R. Bryant I'm not being fed and
could they do something. My pleas were again ignored.

97. On December 24, 2016, I was denied breakfast, lunch,
and dinner by the officers serving breakfast, lunch and
dinner in RCTP.

98. On December 24, 2016, during the morning and evening
med run I informed the RCTP nurse on rounds I
was being starved by the officers and again nothing was
done.

99. On December 25, 2016, I was denied breakfast, lunch
and dinner by the officers serving breakfast, lunch and
dinner in RCTP.

100. On December 25, 2016, during the morning med run I
informed RCTP nurse Brenda Maurice the officers are
refusing to feed me and I haven't eaten in 4 days.

_Cont'd_                                                          pg. 24

My pleas were ignored.

101. On December 25, 2016, during the evening med run I informed the RCTP Nurse I haven't been fed in 4 days. Again my pleas were ignored.

102. On December 26, 2016, I was denied breakfast, lunch and dinner by the officers serving breakfast, lunch and dinner in RCTP.

103. On December 26, 2016, I informed RCTP nurse R. Bryant during the morning and evening med run I was being starved by the officers an I haven't eaten in 5 days and could you please do something so I could eat. My pleas were again ignored because I still wasn't given anything to eat.

104. On December 27, 2016, I was denied breakfast by the officers serving breakfast in RCTP.

105. On December 27, 2016, right after I was denied breakfast I was put in a van and transferred to Auburn Correctional Facility where I received medical care for the injuries sustained due to the brutal staff assault I endured at Clinton RCTP on December 21, 2016.

Cont'd                                                                                      Pg. 25

106. I was not fed by the C.O's during my stay in RCTP OBS 2 cell which was from December 21 - December 27, 2016. I was denied a total of 18 meals and had to live off water from my sink. This wasn't an isolated incident because starvation is a common occurrence in Clinton RCTP as a form of punishment.

107. While in RCTP OBS cell 2 my feet swelled up with a throbbing pain due to the baton being beat on my bare feet on December 21, 2016, whereas I had to crawl to the toilet because I couldn't walk. ~~Furthemore~~ Also, I received no medical treatment for my swollen feet, swollen pinky finger or sore back and body while in ~~the~~ OBS cell 2. All my injuries were caused by the assault of December 21, 2016, ~~by~~ done by defendants Devins, Hitts, Lamay, Beziq, Carter and Lee.

108. Furthemore, while in Clinton RCTP from December 5, 2016 to December 27, 2016, I wasn't given a shower, toothbrush, toothpaste and a change of smock once.

## CLAIMS FOR RELIEF

109. The actions of defendants Yildiz, Mahmud, Steinbugher, in discharging plaintiff w/that treatment back to Upstate

cont'd

after plaintiff telling them he was suicidal constitutes "deliberate indifference."

110. The actions of Kemp, Marinelli, Danforth, Kumar, Mullens, Keating, Kelch in refusing to stop plaintiff during suicide attempt involved obduracy and wantonness on part of defendants and constituted deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

111. The actions of Sawyer, Law, in discharging plaintiff without treatment, and falsifying progress notes to justify denial of that treatment and failure to refer a suicidal prisoner to psychiatrist because he was black constitutes deliberate indifference and violation of Eighth Amendment and Equal Protection Clause for racial discrimination as a class of one of the Fourteenth Amendment.

112. The actions of Mahirtin, McBrian, Bryant, Maurice, in not reporting plaintiff was being starved by correctional staff involved obduracy and wantonness on part of defendants and constituted deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

cont'd                                                    pg. 27

113. The actions of defendants Devins, Hitts, Lamoy, Bezio, Cartee, Lee, in using physical force against the plaintiff was done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

114. Plaintiff demands a trial by Jury.

## RELIEF REQUESTED

WHEREFORE, plaintiff requests that the Court grant the following relief:

A. Issue a declatory Judgment stating that:

1. The physical abuse of the plaintiff by defendants Devins, Hitts, Lamoy, Bezio, Cartee, Lee, violated the plaintiffs rights under the Eighth Amendment to the United States Constitution.

2. Defendants Yildiz, Mahmud, Stenboghee, owed plaintiff a duty of reasonable care to protect him from the unnecessary and wanton infliction of pain he suffered by intentionally denying access to mental health care; that the denied treatment was necessary and plaintiff

cont'd                                                    pg. 28

was harmed by the denial of treatment constituting deliberate indifference to the plaintiffs need for a serious mental health need in violation of Eighth Amendment.

3. Defendants Yildiz, Mahmud, Stenboghee, Kemp, Marinell, Danforth, Kumar, Mullens, breached that duty by willfully and maliciously returning plaintiff to Upstate; with the knowledge that such confinement would aggravate his mental health was so injurious to plaintiff that it amounts to a constitutional violation, reflected deliberate indifference and cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

4. Defendants Kemp, Marinell, Kumar, Mullens, Keating, Kelch owed plaintiff a duty of reasonable care to protect him from himself, plaintiff was harmed by denial of treatment constituting deliberate indifference to the plaintiffs need for a serious mental health need and medical needs in violation of Eighth Amendment.

5. Defendants Sawyer, Law, caused the damage to plaintiff with the intentional denial of mental health treatment constituted deliberate indifference in violation of Eighth Amendment and Equal Protection Clause of the Fourteenth Amendment.

Cont'd

6. Defendants Mahirfin, McGraw, Bryant, Maurice, with the knowledge that plaintiff wasn't being fed by officers in RCTP, persistently violated a statutory duty to inquire about such behavior and to be responsible for preventing it, was so injurious to plaintiff that it amounts to a constitutional violation, reflected deliberate indifference under the Eighth Amendment of the United States Constitution.

7. The breach of duty resulted in damages: i.e., further diminishment of plaintiff's mental health causing an unnecessary and wanton infliction of ft pain when plaintiff swallowed a state issued razor and banged his head against the wall for 1 hour and 12 minutes until he went unconscious.

8. The breach of duty proximately caused the damage to plaintiff with the intentional denial of mental health treatment when plaintiff had a serious mental health need and defendants knew that plaintiff faced substantial risk of serious self-harm if returned to Upstate and disregarded that risk by failing to take reasonable measures to abate it.

cont'd

pg. 30

B. Award compensatory and punitive damages:

1. Jointly and severally against defendants Devins, Hitts, Lamoy, BeBezio, Carter and Lee for the physical and emotional injuries sustained as a result of the plaintiffs beating.

2. Jointly and severally against defendants Yildiz, Mahmud, Steinbogler, Kemp, Marinelli, Danforth, Kumar, Mullens, Sawyer, Law, Mahutis, McGraw, Bryant, Maurice, for the physical and emotional injuries resulting from their failure to provide adequate mental health care and medical care to the plaintiff.

3. Jointly and severally against defendants Keating and Kelch for the physical and emotional injury resulting for their failure to intervene and stop plaintiff from hurting himself.

C. Grant such other relief as it may appear that plaintiff is entitled

cont'd                                                    pg. 31.

C. Grant such other relief as it may ~~apper~~
appear that plaintiff is entitled

DATED: June 17, 2019
         Elmira, New York


                            K. allah
                      Kha'Sun Creator Allah
                          #99-A-2660
                      Elmira Corr. Facility
                      P.O. Box 500
                      Elmira, NY 14902-0500


SWORN TO BEFORE ME THIS

17 day of June, 20 19

NOTARY PUBLIC
STEVEN D. LEE
NOTARY PUBLIC, STATE OF NEW YORK
CHEMUNG COUNTY, LIC. # 01LE6231045
COMMISSION EXPIRES NOV. 15, 20 22